[Civ. No. 19169.   Second Dist., Div. Three.   Mar. 6, 1953.]

NANCY COLVER YOST, Respondent, v. RALPH E. YOST, Appellant.

James D. Garibaldi and Iverson & Hogoboom for Appellant.

Donald Paul Covert for Respondent.

WOOD (Parker), J.—Action for declaratory relief. Defendant appeals from judgment in favor of plaintiff.

On April 14, 1944, appellant (husband) commenced an action against respondent (wife) for divorce. They entered into a property settlement agreement which provided, in part, that appellant would pay respondent $100 per month for her support and the support of their child. The action was tried as a default. In the interlocutory decree of divorce which was granted to appellant, it was ordered that he pay to respondent $100 per month for her support and the support of the child. The agreement was filed but it was not made a part of the decree.

In December, 1944, appellant married Miss Sandirfer in Mexico.

On May 15, 1945, respondent made a motion to set aside the interlocutory decree upon the ground that it had been procured through fraud.

On June 7, 1945, appellant and respondent entered into a property settlement agreement which provided, in the first three paragraphs thereof, that the property agreement of April 12, 1944, was thereby cancelled; that certain furniture and an automobile should be the separate property of respondent; that appellant would pay to respondent $100 per

month for the support of their child, and that respondent should have custody of the child.

In paragraph IV thereof (which is the provision in controversy here), it was provided:

"IT IS ALSO AGREED that the Party of the First Part, RALPH E. YOST, will pay to the Party of the Second Part, NANCY COLVER YOST, the sum of One Hundred Fifty ($150.00) Dollars per month, commencing on the 1st day of July, 1945, and continuing until said NANCY COLVER YOST shall remarry.

"IT IS FURTHER PROVIDED, however, that as long as the Party of the First Part is in the service of the Government of the United States, as he now is, he shall have the privilege of paying the Party of the Second Part Fifty ($50.00) Dollars or more per month on account of each and all of said monthly installments under this Paragraph IV set forth, and that when the said Party of the First Part is out of the service, and establishes a medical practice or other business sufficient so that his earnings will warrant him in doing so, he will continue to pay to the Party of the Second Part, NANCY COLVER YOST, the sum of One Hundred Fifty ($150.00) Dollars per month, plus arrearages on account of said suspended payments during the time he was in said service." Paragraph V (which is not in controversy here) pertains to insurance policies. The remaining paragraphs (also not in controversy) contain general provisions regarding the release of rights and obligations of each to the other.

On June 8, 1945, respondent stipulated that her motion to set aside the interlocutory decree be denied. Said motion was denied. On June 15, 1945, appellant obtained a final decree of divorce.

After said agreement of June 7, 1945, was made, and during the time appellant was in the army, he paid the $100 per month for the support of the child and $50 per month for the support of respondent. His military service ended in August, 1945, and in the following September he began the practice of medicine in Vallejo. He continued to pay $100 per month for the child and $50 per month for respondent until October 1, 1950, when the court increased the amount for the child to $150 per month. Then he continued to pay said amount for the child. After said October 1st, he did not pay any amount for the support of respondent.

In October, 1949, she sought an order of court in the divorce proceeding requiring him to pay $550 per month for the support of the child and herself. She alleged therein that he

had the ability to pay that amount. The existing order was not modified. In August, 1950, she again sought such a modification and the court decided that the order for the support of respondent was invalid because she was the one against whom the divorce decree had been granted. It was in this last mentioned proceeding that the amount for child support was increased, as above stated, to $150 per month.

In the amended complaint herein it is alleged that there is a controversy relating to the rights of the parties under paragraph IV of said agreement in that: (1) Plaintiff (respondent) claims that defendant (appellant) should pay $150 per month for her support since September, 1945, when he established medical practice in Vallejo; (2) defendant claims that he is not bound to pay more than $50 per month until such time as he has paid all of his debts and has sufficient money remaining to pay $150 per month; (3) plaintiff alleges that the net earnings of defendant are now and for several years have been in excess of $12,000 per year and are sufficient to warrant him in paying $150 per month; (4) defendant claims that his net income does not warrant him in paying more than $50 per month for the support of plaintiff, and that only $50 per month for the support of plaintiff actually becomes due each month.

In the answer to the amended complaint it is alleged that the agreement of June 7, 1945, was entered into by defendant against his will and as a result of force and coercion on the part of plaintiff in that plaintiff contacted defendant's commanding officer and caused the officer to threaten defendant with a court-martial and discharge from the Army if he refused to sign the agreement.

The court found that defendant entered into said amended agreement of June 7th freely and voluntarily and not against his will or as a result of force, menace or coercion; that defendant's conduct with regard to the amended agreement, during all times after its execution and prior to the filing of this action, evinces an intention to abide by the contract; that defendant has ratified said agreement; defendant made no attempt prior to the filing of this action to disaffirm the agreement; he claimed, for the first time, in 1949 and after plaintiff had begun court proceedings to force him to pay $150 per month for her support, that the due date of $100 of said amount was suspended until his financial ability was greater; said agreement provides in paragraph IV that defendant would pay plaintiff $150 per month for her support

commencing on July 1, 1945, and continuing until she remarried, the same being in addition to amounts to be paid by defendant for support of the child; said paragraph provides that defendant, as long as he remained in the service of the United States Government, would have the privilege of paying plaintiff only $50 per month for plaintiff's support; he remained in said service until August 31, 1945, when he began the practice of medicine in Vallejo; he paid only $50 per month for the support of plaintiff thereafter and through September, 1950, and he has paid nothing for her support since September, 1950; pursuant to the terms of said paragraph IV, the difference between $150 per month to be paid by defendant for plaintiff's support and the $50 per month actually paid by him for the months of July and August, 1945, referred to in the agreement as "arrearages," totaling $200, was not to become due until defendant had the financial ability to pay such arrearages; he has not had such ability; the difference between the $150 per month to be paid for plaintiff's support and the amounts paid by him after September 1, 1945, to October 17, 1951 (the date the matter was submitted for decision), is $8,050, which amount is due to plaintiff. (There are findings regarding insurance policies, but there is no question on appeal regarding those findings.)

Judgment was for plaintiff for $8,050, and certain amounts for interest and attorney's fees. (The judgment included a provision regarding life insurance, but such provision is not material on this appeal.)

Appellant contends that the court erred in failing to find that said agreement is void because it was procured by menace. He argues that the evidence established that menace was practiced upon him to induce him to sign the agreement; that the evidence shows that: respondent went to see appellant's commanding general and filed charges against appellant; that although she was informed that he faced court-martial and dishonorable discharge, she refused to withdraw the charges; she told him that if he signed the agreement she would withdraw the charges; and immediately after signing the agreement the charges were dropped.

Appellant testified that on May 12, 1945, he received a telephone call from Dr. Colver, who is the father of respondent, and thereafter on that day he met Dr. Colver and had a conversation with him; on the following day he received a call from the commanding officer at Santa Ana where appellant, a major in the Medical Corps, was stationed;

appellant then went to the general's office and the general "told me that because of the information he had received from Mrs. Yost and Dr. Colver, that I would have to get the difficulties straightened out without any publicity, or I would face a court-martial or discharge without honor from the service"; that at that time he was married to Harriet Sandirfer, whom he had married in December, 1944, in Tijuana; he had been told by an attorney that it was permissible to marry outside California before he had a final decree of divorce; appellant, after having talked with the general, went to see respondent and told her that since she had gone to the general, he (appellant) probably would face a court-martial and dishonorable discharge, and he asked her to withdraw her complaint; she replied that she could not withdraw it at that time; about that time a notice of motion to set aside the interlocutory decree was served on him; on one or two occasions thereafter, when he saw respondent, Dr. Colver was present; about June 1, 1945, he went to an attorney's office where he was asked to sign the said agreement in controversy here, and at that time he told respondent and Dr. Colver that he could not at that time pay the amount stated in the agreement; he had never practiced medicine before he entered the military service; about June 7th, he was called to an attorney's office where he signed an agreement between him and Dr. Colver. (That agreement was to the effect that Dr. Colver would pay to respondent the $100 per month which appellant had agreed to pay under paragraph IV of said other agreement of June 7th, until appellant was out of military service and had established a medical practice sufficient to warrant him in making the said payments called for in paragraph IV; and that when appellant's financial status warrants it he would pay Dr. Colver the money which Dr. Colver had paid under said agreement.) He testified further that on the occasion of his signing the two agreements respondent said she would withdraw the charges; she withdrew them, and he had no more difficulty regarding a court-martial. He was the only witness at the trial.

The evidence shows that the general told appellant that because of information he had received from respondent and Dr. Colver appellant "would have to get the difficulties straightened out without any publicity." The evidence does not show what information the general received from them. Presumably the difficulties, referred to, related to the fact

that appellant had two wives. It does not appear that respondent or Dr. Colver gave information to the general that was unfounded in fact. In *Miller* v. *Walden,* 53 Cal. App.2d 353 [127 P.2d 952, 957], it was said at page 361: "[D]uress and menace arise by virtue of unlawful action upon the part of some person . . .. His visit to the district attorney . . . and his demand for the return of his money were all certainly proper . . .. If fear of prosecution resulted therefrom, and the execution of the note followed from such fear, no inference of illegality could arise therefrom. . . . But it is the threat and not the apprehension which makes out the menace and that threat must be an unlawful and invalid one. A threat to exercise a valid legal right cannot be construed to be an act of duress." Respondent filed a notice of motion to set aside the interlocutory decree, but under the circumstances herein, where appellant remarried about six months after the interlocutory decree was granted, it cannot be said that it was not proper to make such a motion. Appellant did not attempt to disaffirm the agreement until this action was commenced, — about six years after the contract was made. The evidence was sufficient to support the finding that appellant did not enter into said agreement as a result of menace or coercion.

Appellant also contends that the court erred in holding that, by reason of lapse of time and ratification, appellant was barred from raising the defense of menace. It does not appear that the court ruled that appellant was not permitted to present such a defense. Evidence offered by appellant on that subject was received, but the court found, as above stated, that his conduct after the execution of the agreement and prior to the filing of this action evinces an intention to abide by the contract; and that he ratified the agreement.

■ Appellant also contends that the court erred in construing paragraph IV of the agreement. He argues that the paragraph should be construed to mean that appellant was required to pay $150 per month after his release from the Army only if he had the financial ability to pay that amount. The first paragraph of said paragraph IV states clearly that appellant will pay respondent $150 per month, commencing July 1, 1945, and continuing until she shall remarry. The second paragraph of said paragraph IV states that: "It is further provided, however, that as long as" appellant "is in the service . . . as he now is, he shall have the privilege of

paying'' respondent $50 per month on account of said monthly installments, ''and that when'' appellant ''is out of the service, and establishes a medical practice or other business sufficient so that his earnings will warrant him in doing so, he will continue to pay to'' respondent $150 per month, ''plus arrearages on account of said suspended payments during the time he was in said service.'' The findings and the conclusions of law show that the court interpreted the paragraph to mean that appellant was and is obligated to pay respondent, for her support, $150 per month on the first day of each month from and after July 1, 1945; that said paragraph IV provides for suspension of $100 per month of each of said payments during the time appellant was in the military service; that the amounts which were suspended during the time appellant was in the service were not to become due until he became financially able to pay them; that the payments of $150 per month for the support of plaintiff were to become due when appellant was released from the service. In other words, full payment of $150 per month was to be suspended only as long as appellant remained in the service, and the provision relative to the sufficiency of his earnings was intended to affect only his duty to pay arrearages on account of suspended payments during the time he was in service. Appellant construes the provision as if it read that he should have the privilege of paying $50 per month until he is out of the service and establishes a medical practice so that his earnings will warrant him in starting to pay respondent $150 per month. Appellant's argument is to the effect that it was intended by paragraph IV that he should be required to pay only $50 per month until respondent carries the burden of proving that his income, when considered with all the debts that might be created by him, is sufficient to warrant him in paying $150 per month to respondent. As above stated, the first part of the second paragraph of paragraph IV provides clearly that ''as long as'' appellant is in the service he shall have the privilege of paying $50 per month. It is to be noted that in the last part of said second paragraph the words ''continue to pay'' are used. Those words are in the part of the sentence which is to the effect that when appellant is out of the service and establishes a medical practice he will ''continue to pay'' $150 per month, plus arrearages on suspended payments during the time he was in the service. Those words ''continue to pay'' indicate that it was contemplated that, at some time before establishing a medical practice, the

suspension period would be over and he would have started to pay the $150 per month. The phrase, regarding arrearages, at the end of said sentence indicates that it was the payment of arrearages, occurring during the time he was in the service, that was conditional upon the amount of his income. The trial court did not err in construing paragraph IV.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.